IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01181-KLM

DARLENE MAE ROMERO,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court[1] on the **Social Security Administrative Record** [#11],[2] filed August 21, 2014, in support of Plaintiff's Complaint [#1] seeking review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq., and for supplemental security income benefits pursuant to Title XVI of the Act, 42 U.S.C. § 1381 et seq.  On September 30, 2014, Plaintiff filed an Opening Brief [#14] (the "Brief").  Defendant filed a Response [#15] in opposition, and Plaintiff filed a Reply [#16]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§

---

    [1] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2.  *See Order of Reference* [#21].

    [2] "[#11]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

405(g) and 1383(c). The Court has reviewed the entire case file and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** for further proceedings.

## I. Factual and Procedural Background

Plaintiff alleges that she became disabled at the age of forty-three on February 9, 2009, due to a variety of impairments. Tr. 15, 25.[3] On August 10, 2011, Plaintiff filed applications for disability insurance benefits under Title II and for supplemental security income under Title XVI. Tr. 14. On January 7, 2011, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 137-47. Plaintiff appealed the decision to the Appeals Council, which remanded for further proceedings. Tr. 152-55. On December 17, 2012, the ALJ entered a second decision, finding that Plaintiff was "not disabled under section 1614(a)(3)(A) of the Social Security Act." Tr. 26.

The ALJ determined that Plaintiff met the insured status requirements of the Act through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity ("SGA") since February 9, 2009 (the alleged onset date of her disability). Tr. 15. The ALJ found that Plaintiff suffers from two severe impairments: (1) disorder of the back and (2) left knee problems. Tr. 15. However, the ALJ also found that these impairments, individually or in combination, do not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 21. The ALJ next concluded

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 11, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-7, and 11-8, by the sequential transcript numbers instead of the separate docket numbers.

that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work except with occasional bending, squatting, kneeling and climbing and no use of foot or leg controls. Tr. 22. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff was unable to perform any past relevant work but that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform . . . ." Tr. 24-25. Specifically, based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the representative occupations of hand packager, interviewer, and telephone clerk. Tr. 25. He therefore found Plaintiff not disabled at step five of the sequential evaluation. Tr. 26. The ALJ's decision has become the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. §§ 404.981, 416.1481.

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); *see also Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (quoting 20 C.F.R. § 416.905(a)). The existence of a qualifying disabling impairment must be demonstrated by "medically

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Court reviews a final decision by the Commissioner by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Harper v. Colvin*, 528 F. App'x 887, 890 (10th Cir. 2013) (quoting *Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000)). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F. 3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo.*" *Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007).

**A.    Legal Standard**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether a claimant is "presently engaged in substantial gainful activity." *Wall*, 561 F.3d at 1052 (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). If not, the ALJ considers at step two whether a claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall*, 561 F.3d at 1052 (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Wall*, 561 F.3d at 1052 (quoting *Allen*, 357 F.3d at 1142). "If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work." *Wall*, 561 F.3d at 1052 (citing *Allen*, 357 F.3d at 1142). "Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1140 (internal quotation marks omitted). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record . . . ." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff requests judicial review of the ALJ's decision denying her disability insurance benefits and supplemental security income. *Brief* [#14] at 5. Specifically, Plaintiff argues that: (1) the ALJ improperly assessed Plaintiff's mental health impairment, (2) the ALJ's RFC finding does not account for both severe and nonsevere impairments, (3) the ALJ improperly rejected the medical opinion of Carlos Rodriguez, Ph.D. ("Dr. Rodriguez"), (4) the ALJ's finding that Plaintiff can perform the job of hand packager is inconsistent with the RFC, and (5) the ALJ did not properly follow the two-step process for assessing the

credibility of Plaintiff's testimony. *Id.* at 4. The Court begins with Plaintiff's credibility argument.

### A.     The ALJ's Evaluation of Plaintiff's Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determination when supported by substantial evidence." *Smith v. Colvin*, __ F. App'x __, __, 2015 WL 5315660, at *3 (10th Cir. Sept. 14, 2015) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted)). "But 'findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* "An ALJ must do more than simply 'recite[ ] the general factors he considered . . . [without] refer[ring] to any specific evidence.'" *Smith*, 2015 WL 5315660, at *3 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). "*Kepler* does not, however, 'require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.'" *Id.*

Plaintiff's argument here is a bit of a moving target. First, despite some statements hinting to the contrary in the Motion [#14], she does not argue that the ALJ erred by finding that some of Plaintiff's testimony was not credible. *See Reply* [#16] at 23-24 ("Plaintiff's argument wasn't that the ALJ didn't have proper reasons for discounting portions of plaintiff's testimony."). Rather, Plaintiff's argument appears to be that the ALJ did not specifically state which of Plaintiff's statements were credible and how he incorporated her credible statements into the RFC. *See id.* at 24. However, the specificity sought by Plaintiff is not the standard. The ALJ is not required to discuss every piece of evidence he considers. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ is only

required to explain and support with substantial evidence which of a claimant's testimony he did *not* believe and why, see *McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002), which, as Plaintiff concedes, he did.

In connection with this argument, Plaintiff attacks certain alleged boilerplate used by the ALJ in connection with his credibility assessment of Plaintiff. *Motion* [#14] at 41-42; *Reply* [#16] at 25. In *Smith v. Colvin*, 2015 WL 5315660, at *3, the claimant also attacked as improper the alleged boilerplate statement that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment," a statement which is materially identical to the one used by the ALJ here. Tr. 22. The Tenth Circuit Court of Appeals found no error in using this language so long as the *Kepler* test was otherwise met. The dictates of *Kepler* are met when the ALJ sets forth the specific evidence he relied on in evaluating the claimant's credibility. *See Qualls*, 206 F.3d at 1372. Here, the ALJ did just that:

> The claimant's credibility is questionable. She has stated that she did not drink alcohol and has also stated that she occasionally drank, and stated that she drank 30 alcoholic beverages per weekend. Her reports of back pain have also varied considerably, as she has reported back pain beginning in 2009 and of having had back pain for 20 years. She had reported constant [sic] and denied having any back pain. The claimant's statements concerning pain relief from epidural injections varies with telling. The records show the claimant is independent in self-care and activities of daily living and is able to drive independently. She testified that she lived with her daughters and they did everything for her. Choosing not to do anything is not the same as being unable to do anything. The claimant stated that she had constant pinching nerve pain, however, the objective medical records are negative for any evidence of any nerve involvement.

Tr. 22-23.

The Court finds that the ALJ's analysis meets the *Kepler* test, and the ALJ therefore did not commit reversible error on this point.

**C.     The ALJ's Evaluation of Dr. Rodriguez's Medical Opinion**

Plaintiff argues that the ALJ improperly assigned "no weight" to the opinion of Dr. Rodriguez, a licensed psychologist. *Motion* [#14] at 31-35.

An ALJ must give the opinion of a treating physician controlling weight only when it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* Even if a treating physician's medical opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir. 1989). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2)the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. § 404.1527(c). Although the six factors listed above are to be considered in weighing medical opinions, the Court does not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Oldham*, 509 F.3d at 1258 (quoting *Watkins,* 350 F.3d at 1300).

Because it is based on a onetime examination of Plaintiff which did not include treatment, Dr. Rodriguez's opinion is not entitled to controlling weight as a treating physician. *See Watkins*, 350 F.3d at 1300. The ALJ therefore appropriately considered most of the other factors when determining the weight to give to Dr. Rodriguez's opinion. *See Drapeau*, 255 F.3d at 1213. The ALJ stated:

> In November 2012, Carlos Rodriguez, Ph.D. diagnosed the claimant with post-traumatic stress disorder, severe depression, alcohol abuse in remission, and rule out diagnosis of borderline intellectual functioning, dementia, and academic development disorder. No testing was done. Dr. Rodriguez stated prognosis for change in these conditions was guarded and they could be expected to last more than 12 months. Dr. Rodriguez based his diagnosis on a few pages (17) of records from Spanish Peaks Mental Health, which cover an entire three year period, and the claimant's statements which are inconsistent with, contradictory to, and not supported by the evidence of record or her statements made to other care providers. No weight is given to this unsupported assessment based more on the statement[s] made by the claimant in a onetime interview than on any actual factual or objective findings.

Tr. 21 (internal citation omitted). The ALJ's analysis is sufficiently specific to make clear the weight he gave to the medical opinion and the reasons for that weight. *See Oldham*, 509 F.3d at 1258. Thus, with one exception, the Court finds no reversible error in the ALJ's analysis of Dr. Rodriguez's opinion.

The exception turns on the ALJ's statement that "[n]o testing was done" was done by Dr. Rodriguez. Tr. 21. However, as noted by Plaintiff, *Motion* [#14] at 32, Dr. Rodriguez administered a Mini-Mental Status Examination. *See* Tr. 577, 579. Under most circumstances, the Court would find such error to be harmless, because it is clear from the ALJ's discussion that he fully evaluated Dr. Rodriguez's report, even going so far as to cite to information located on the same page that the Mini-Mental Status Examination was mentioned. *See* Tr. 579. However, the ALJ also stated that he gave no weight to the

medical opinion because the bases for Dr. Rodriguez's diagnosis were meager mental health records and unsubstantiated, uncreditable statements made by Plaintiff. Tr. 21. It is clear from the evaluation, though, that Dr. Rodriguez *also* based his diagnosis on the Mini-Mental Status Examination. Tr. 577, 579. The reason why this is important is because inclusion of this information could potentially alter the ALJ's decision to give "no weight" to the medical opinion to giving it some level of increased weight. The repercussions of this potential change are argued throughout Plaintiff's briefs, and the Court must address some of those arguments to demonstrate the possible importance of an altered evaluation of this medical opinion.

Plaintiff argues that the ALJ erred by failing to find her mental impairments "severe" at step two of his analysis. *See, e.g.*, Reply [#16] at 5-11. The Tenth Circuit Court of Appeals has addressed how an ALJ's error at step two is often harmless:

> The ALJ found at step two the alleged mental impairments (which he identified as anxiety, depression, and a personality disorder not otherwise specified) were medically determinable but non-severe. An error at step two concerning the severity of a particular impairment is usually harmless when the ALJ, as here, finds another impairment is severe and proceeds to the remaining steps of the evaluation. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). The real problem occurs later in the analysis, where the ALJ is required to consider the effect of all medically determinable impairments, severe or not, in calculating the claimant's RFC. *See* 20 C.F.R. § 404.1523 ("If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."); *id.* § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your [RFC]."). Thus, we turn to the issue of whether the ALJ properly evaluated the effect of [the claimant's] mental impairments in assessing his RFC.

Similarly, here the ALJ found that Plaintiff could not conclusively be denied benefits at step two and proceeded to steps three, four, and five of his analysis. Thus, under most circumstances, such error is harmless.[4]

However, Plaintiff further argues that the ALJ failed to account for Plaintiff's non-severe mental impairment of depression as part of his RFC analysis. Plaintiff misconstrues the ALJ's decision at step two. Not only did the ALJ find that the scant evidence of Plaintiff's depression did "not support a finding of a severe work limiting mental health impairment," Tr. 21, but he also failed to find that it was a non-severe impairment, i.e., he found that it was not an impairment at all. The ALJ explicitly stated which of the alleged impairments were non-severe, and he did not include depression among those impairments. Tr. 22 (discussing cardiac problems, bilateral rib pain, hip pain, abdominal pain, and gastric problems). Given his analysis of Plaintiff's credibility and his decision to give Dr. Rodriguez's opinion no weight, the ALJ clearly found that the record did not support a finding that depression was an impairment at all. If the alleged impairment was unsupported by the record, then the ALJ was under no obligation to later consider it as part of his step four analysis. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (differentiating "moderate impairment" from "no impairment" and holding that the former must be considered by the ALJ at step four of analysis).

---

[4] To the extent Plaintiff argues that the ALJ failed to comply with the Appeals Council Remand Order to properly consider Dr. Vargas's opinion regarding Plaintiff's mental impairments, the Court notes, first, that the Appeals Council has already examined the ALJ's amended opinion and affirmed it (thereby implying that the ALJ complied with its remand order), and, second, that compliance with the Appeals Council order at this stage of the proceedings is irrelevant. What matters is only whether Plaintiff and the Commissioner have met their respective burdens at each of the five steps of the disability determination process, which the Court here examines to the extent argued by the parties.

Having clarified this point, the Court turns to the related issue of whether the ALJ may have committed reversible error by finding that depression was not an impairment. If the ALJ had decided to give any weight to Dr. Rodriguez's opinion, Plaintiff's alleged mental impairment(s) would change from being "no impairment" to being a non-severe impairment. If that were the case, then the ALJ's analysis at later steps would be impacted, because "[i]n determining the claimant's RFC, the ALJ was required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Hill v. Astrue*, 289 F. App'x 289, 292 (10th Cir. 2008). As noted, this was not done as part of the ALJ's current analysis and, indeed, he was under no obligation to do so if he deemed the alleged impairment to be "no impairment." Because the ALJ's decision regarding the weight of Dr. Rodriguez's opinion may be impacted by consideration of Dr. Rodriguez's testing, and because this weight may affect all later steps, the ALJ committed reversible error. The Court cannot reweigh the evidence before it and guess at what the ALJ's decision would be under such circumstances.

Because consideration of the test administered by Dr. Rodriguez could impact the ALJ's analysis at steps two, three, four, and five, this case must be remanded for further proceedings.[5]

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the decision of the Commissioner that Plaintiff is not disabled is **REVERSED** and this matter is **REMANDED** for further proceedings consistent

---

[5] The Court does not reach Plaintiff's remaining arguments, as they may be impacted by the ALJ's review of the issues on remand.

with this opinion.[6]

IT IS FURTHER **ORDERED** that Plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed. R. Civ. P. 54(d)(1), D.C.COLO.LCivR 54.1, and 28 U.S.C. § 2412(a)(1). See *Knuutila v. Colvin*, __ F. Supp. 3d __, __, 2015 WL 5116723, at *5 (D. Colo. Aug. 31, 2015).

Dated: September 25, 2015

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge

---

[6] The Court finds that this case does not present a proper occasion on which to exercise its discretion and direct the award of benefits. See *Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). By reversing the ALJ's decision, the Court does not find or imply that Plaintiff is or should be found disabled. See, e.g., *Knuutila v. Colvin*, __ F. Supp. 3d __, __, 2015 WL 5116723, at *5 n.5 (D. Colo. Aug. 31, 2015).